UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL POCOCK,

                Plaintiff,

       -against-

SOFTWARE IN THE PUBLIC INTEREST, ET AL.,

                Defendants.

25-CV-3883 (LTS)

SECOND ORDER OF DISMISSAL

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is proceeding *pro se* and *in forma pauperis* ("IFP"), filed this complaint alleging that Defendants violated his rights. By order dated August 20, 2025, the Court dismissed the complaint for failure to state a claim on which relief may be granted, but granted Plaintiff leave to replead his claims in an amended complaint. (ECF 6.) On October 25, 2025, Plaintiff timely filed an amended complaint.[1] The action is dismissed for the reasons set forth below.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise

---

[1] By order dated September 24, 2025, the Court granted Plaintiff's request for an extension of time to file an amended complaint. (ECF 11.)

the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471,

474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude"

in *pro se* cases, *id.* at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still

must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to

make a short and plain statement showing that the pleader is entitled to relief.

## BACKGROUND

In his original 139-page complaint, Plaintiff, who provides a Delaware address for

himself but alleges that he is a citizen of Switzerland, sued 25 individuals and entities located in

various states throughout the United States and in several European countries, asserting a wide

array of federal and state law claims. By order dated August 20, 2025, the Court dismissed the

complaint for failure to state a claim. (ECF 6.) The Court began its order with an extensive

summary of Plaintiff's allegations documenting decades of his life as a software developer and

describing various events that happened to him and other people throughout the United States

and in African, European and South American countries. The Court concluded that Plaintiff's

complaint failed to comply with Rule 8 of the Federal Rules of Civil Procedure, which requires

"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a)(2). The Court stated,

> Plaintiff asserts claims against more than two dozen defendants located
> throughout the world. The 139-page complaint describes numerous events
> occurring over several decades in various European, African, and South American
> countries. Many of the events described in the complaint do not appear to involve
> Plaintiff at all. It is unclear to the Court, and would be unclear to any responding
> defendant, what viable claims Plaintiff is seeking to assert against which
> defendants.

(ECF 6, at 10.) The Court also noted that, to the extent Plaintiff sought to assert constitutional

claims under 42 U.S.C. § 1983, he could not state a claim because all of the defendants appeared

to be private citizens. (*Id.* at 10-11.)

2

Plaintiff's 386-page, single-spaced amended complaint is similar in style and substance to his original pleading. He sues 27 entities and individuals, which he alleges are located in the States of New York, California, Washington, Delaware, and Utah, as well as the nations of Belgium, Germany, France, the United Kingdom, Switzerland, and Italy. In an introduction to the amended complaint, Plaintiff describes some of the changes he made to the original complaint:

> Fundamentally, the plaintiff demonstrates four generations of his family have been in proximity to the real abuse scandal and the vendettas of the social media set have caused undue distress with references to "abuse" and "bad faith" after the conviction of a senior Cardinal. The Plaintiff demonstrates that this is bigger than any single case of abuse, it is about parallels between cultures of abuse and "bad faith" in both the oldest and newest institutions. The [Court] notes that some points concern victims other than the plaintiff: this is deliberate, the plaintiff is not pleading on behalf of other victims but he wishes to demonstrate the dispute did not arise from some mistake or inadequacy on the part of the plaintiff, the dispute arises because of the overall culture and habitual manner in which overlords are snubbing and censoring their co-authors.

(ECF 12, at 22.)

Among many other changes to his pleading, Plaintiff "expanded" the "[c]hronological history" of the events,

> in particular, explaining the entire group admitted in 2006 that their behaviour, as a group, is the real problem and they need a psychiatrist to spend a day with them each year at the annual conference. This admission is notable because it immediately precedes the suicide cluster, with one of the key deaths on the plaintiff's wedding day.

(*Id.* at 23.)

The amended complaint includes a 5-page "Summary of Claims Against Each Defendant." In this section of the amended complaint, Plaintiff alleges that Ariadne Connell, an employee of Edera, Inc. in Seattle, Washington, engaged in "persistently spreading rumors that a female intern in Google Summer of Code (GSoC) had a relationship with the plaintiff, vilifying both the female intern and the plaintiff." (*Id.* at 24.) As "evidence," Plaintiff refers the Court to

"Techrights public chat log, 22 June 2021 and 25 July 2022." (*Id.*) Plaintiff also alleges that Gandi, apparently a reference to an entity based in Paris, France, engaged in "unauthorized credit card charges between January 2025 and June 2025," and engaged in breach of contract. (*Id.*) And Plaintiff alleges that Paul Tagliamonte, a former White House employee in the Obama administration, engaged in "discrimination against straight people: allowing transgender people to choose alternative names while demonizing straight people who are perceived to be using names other than the name they were born with. (e.g. December 2019, Tagliamonte attacks somebody for using the name 'Santa' at Christmas)[.]" (*Id.*)

Other examples of Plaintiff's claims include that the World Intellectual Property Organisation ("WIPO"), which is based in Geneva, Switzerland, engaged in "psychological torture, by spreading rumours of bad faith subsequent to the prosecution of Cardinal George Pell." (*Id.*) He alleges that the WIPO also, among other things, "operat[ed] a flawed administrative procedure that encourages participants to make accusations of bad faith." (*Id.*) With respect to Defendants "Canonical/Ubuntu/Mark Shuttleworth," Plaintiff asserts that Shuttleworth "personally acknowledged the suicide of Frans Pop (email from 22 August 2010) but continued business as usual leaning on volunteers, with the next death, Adrian von Bidder-Senn, occurring eight months later on the plaintiff's wedding day, 17 April 2011." (*Id.* at 26.)

Defendant Molly de Blanc, who resides in Illinois, allegedly engaged in "modern slavery" when she gave a

> FOSDEM conference talk about being an enforcer, "Legal and Policy Issues" dev-room, 2 February 2019, video still available on FOSDEM web site, used picture of car behind bars to demonstrate how senior developers can be blackmailed and controlled by the threat what she will spread gossip about them in her "whisper network."

(*Id.* at 27.) De Blanc also conducted "teaching techniques for civil disorder" when she gave a speech in 2019 "about 'open source citizenship' includes drawing of three people pushing one of

the developers, 'we can use our collective power to push others' instead of paying people[.]" (*Id.*)

The amended complaint proceeds to a 162-page "chronological" statement of facts underlying Plaintiff's claims that begins with events in 1916 and continues until August 2025, and which is interspersed with various photographs, magazine clippings, and excerpts from emails. Topical headings in the statement of facts include: "Debian founding, obfuscation strategy at SPI, original agreements between joint authors" (*id.* at 38); "Debian as a political party and influence over elections and democracy" (*id.* at 50); "US military: experts made tactical withdrawal from Debian mailing lists before suicide cluster takes off" (*id.* at 52); "Fooled about economics of open source, fake communities: Richard Rothwell confirmed suicide in UK" (*id.* at 61); and "Mystery death in Switzerland on Carla and Daniel's wedding day" (*id.* at 66).

Other headings in the same section include: "Pregnant developer ousts rival from Kde team then uses his name for baby" (*id.* at 72); "Gobbledygook: Code of Conduct gaslighting, practising law without a license, Linus Torvalds banned, purge gathers pace" (*id.* at 77); "Violence, vandalism & Debian libel at Dr Applebaum's home in Berlin. Presumption of innocence trashed" (*id.* at 84); "CCC: Google-funded FSFE staff punish Google critic, Mr Pocock, as elected representative, vilified for defending the victim" (*id.* at 95); "Germans cancelled elections again, proves Google afraid of Mr Pocock's questions" (*id.* at 112); "Cyberbullying, Cardinel Pell gossip erupts at Christmas, civil rights trampled on" (*id.* at 127); and "Mr Pocock punished for starting ethics-oriented business during pandemic and visiting Australian war graves in Courgent, France" (id. at 148).

Plaintiff's 5-page, single-spaced "Summary of the legal claims" includes such assertions

as:

> The founding documents of the various associations and their promises of freedom and transparency imply that the first amendment is applicable to the participants in free, open source software development. The first amendment applies to all volunteers, whether they are joint authors or not. In other words, people who do mentoring, training, publicity, testing, administrative work, support work and similar tasks, without payment, are not claimed to be joint authors but the first amendment does apply to them too when they participate alongside the joint authors in these unpaid, voluntary undertakings.

(*Id.* at 225.) And,

> In the case of the GNOME Foundation, which employs an Executive Director and a few other staff, the last two people hired in the Executive Director role were both removed by the board after a period of only a few months in the job. This further reinforces the perception that board members, under the influence of certain corporations, are seeking an Executive Director who acts as an extension of the donor corporations rather than somebody who builds a stand-alone, independent and credible nonprofit association. In the KDE software, which is analogous to GNOME, a developer has just announced that after twenty five years of collaboration, his colleagues suddenly cut him out and stopped speaking to him due to a perception he "made some comments and would not be happy". Almost at the same time, another Debian Developer, the British Army veteran Phil Wyett, wrote publicly that he no longer has the will to contribute after being told he will never be a real developer. These other cases, including both employees and volunteers, lead us to the finding that the plaintiff's case is not unique, the plaintiff is one of many people who have been bullied and discriminated against for reasons that relate to politics and not due to any genuine wrongdoing.

(*Id.* at 230.)

Plaintiff seeks money damages and various types of injunctive relief, which he describes

over nine pages in the amended complaint. (*See id.* at 234-42.)

## DISCUSSION

The Court dismisses the amended complaint because, like the original complaint, it fails

to comply with Rule 8 of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"A complaint fails to comply with Rule 8(a)(2) if it is 'so confused, ambiguous, vague, or

6

otherwise unintelligible that its true substance, if any, is well disguised.'" *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)); *see Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (holding that complaint did not comply with Rule 8 because "it contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension"). Rule 8 "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged," but it does require, "at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (citation and quotation marks omitted). "It is not the Court's job—nor the opposing party's—to decipher a complaint that is 'so poorly composed as to be functionally illegible.'" *Ghosh v. New York City Hous. Auth.*, No. 21-CV-6139 (AT) (BCM), 2023 WL 3612553, at *6 (S.D.N.Y. Feb. 27, 2023) (quoting *Avramham v. New York*, No. 20-CV-4441 (LLS), 2020 WL 4001628, at *2 (S.D.N.Y. July 15, 2020)), *report and recommendation adopted*, 2023 WL 3746617 (S.D.N.Y. Mar. 20, 2023).

A complaint that fails to comply with Rule 8 may be dismissed. *See, e.g.*, *Da Costa v. Marcucilli*, 675 F. App'x 15, 17 (2d Cir. 2017) (dismissing a complaint because it was convoluted, repetitive and difficult to understand); *Anduze v. City of New York*, No. 21-CV-0519 (LLS), 2021 WL 795472, at *2 (S.D.N.Y. Feb. 26, 2021) (dismissing a complaint as incomprehensible because it was illegible and the legible portions were incomprehensible, such that "the [c]ourt is unable to properly evaluate the full nature and extent of [the] [p]laintiff's claims"); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO v. Tightseal Constr. Inc.*, No. 17-CV-3670 (KPF), 2018 WL 3910827, at *12 (S.D.N.Y. Aug. 14, 2018) ("[C]ourts in this

Circuit have dismissed complaints that are unnecessarily long-winded, unclear, or conclusory."); *Barsella v. United States*, 135 F.R.D. 64, 66 (S.D.N.Y. 1991) (stating that the policy requiring courts to liberally construe *pro se* complaints "does not mandate that a court sustain every *pro se* complaint even if it is incoherent, rambling, and unreadable").

Like the original complaint, Plaintiff's amended complaints names dozens of defendants located throughout the world and catalogues the minutiae of events occurring over several decades throughout the United States and in various European, African, and South American countries. Plaintiff's inclusion of a "Summary of Claims Against Each Defendant" in the amended complaint, which is itself unduly confusing and ambiguous, does not remedy the "labyrinthian prolixity" of the remainder of the complaint. It is unclear to the Court, and would be unclear to any responding defendant, what viable claims and plausible supporting facts Plaintiff is alleging against which defendants. The Court therefore dismisses the amended complaint for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). The Court has already provided Plaintiff with an opportunity to amend. Plaintiff responded to the Court's conclusion that his 139-page complaint was unduly lengthy and confusing by filing a 386-page amended complaint that is equally confusing. Nothing in the amended complaint suggests that further amendment could cure the deficiencies identified above. The Court therefore declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

The Court dismisses the amended complaint for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter judgment in this action.

SO ORDERED.

Dated:   May 26, 2026
         New York, New York

                  /s/ Laura Taylor Swain
                    LAURA TAYLOR SWAIN
             Chief United States District Judge